**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **COMMODITY FUTURES TRADING COMMISSION,**<br><br>*Plaintiff*,<br><br>v.<br><br>**THOMAS LANZANA, individually and d/b/a UNIQUE FOREX, NIKOLAY MASANKO, BLACKBOX PULSE LLC, and WHITE CLOUD MOUNTAIN LLC,**<br><br>*Defendants.* | **Civil Action No. 17-6290**<br><br>**ORDER** |

**THIS MATTER** comes before the Court by way of Plaintiff Commodity Futures Trading Commission's ("CFTC") unopposed application for an entry of default judgment[1] pursuant to Federal Rule of Civil Procedure 55(b), ECF No. 31, against Defendants Thomas Lanzana ("Lanzana"), individually and d/b/a Unique Forex, Nikolay Masanko ("Masanko"), Blackbox Pulse, LLC ("Blackbox" or "BBP"), and White Cloud Mountain, LLC ("WCM");

and it appearing that the pending claims arise out of a scheme to defraud investors, through which Defendants Lanzana and Masanko used sham companies to fraudulently solicit and accept investments in retail off-exchange foreign currency ("forex") transactions and other investments from at least thirty customers, see Compl. ¶ 1;

and it appearing that Plaintiff CFTC is an independent federal regulatory agency that is responsible for administering and enforcing the Commodity Exchange Act (the "Act"), 7 U.S.C. ¶¶ 1-26 and its accompanying regulations (the "Regulations"), 17 C.F.R. pt. 1-190, id. ¶ 9;

---

[1] In deciding a motion for default judgment, "the factual allegations in a complaint, other than those as to damages, are treated as conceded by [the] defendant." DIRECTV, Inc. v. Pepe, 431 F.3d 162, 165 (3d Cir. 2005).

and it appearing that Defendant Lanzana formed and managed Blackbox Pulse LLC—a New Jersey Limited Liability Company through which Lanzana solicited and accepted funds from customers for the purported purpose of trading forex, see id. ¶¶ 2, 10, 12;

and it appearing that Lanzana also did business under the name "Unique Forex," an apparently made-up entity that Lanzana marketed as a limited liability company,[2] id. ¶¶ 1, 10, 13;

and it appearing that Lanzana opened a checking account with BB&T under the name "Thomas L. Lanzana DBA Unique Forex," id.;

and it appearing that using these two corporate aliases—Blackbox Pulse LLC and Unique Forex—Lanzana fraudulently solicited and accepted at least $450,000 from at least fifteen customers for the purported purpose of trading forex, id. ¶ 2, 10, 12-13;

and it appearing that neither Blackbox nor Unique Forex ever registered with the CFTC or maintained trading accounts, id. ¶¶ 12-13;

and it appearing that Lanzana commingled his personal assets with customer funds in the "corporate" accounts for Blackbox and Unique Forex, and that he used those "corporate" accounts to fund his own personal expenses, id. ¶¶ 25, 38;

and it appearing that Defendant Masanko formed and managed White Cloud Mountain, LLC, through which he solicited and accepted funds for the purported purpose of trading forex, id. ¶¶ 11, 14;

and it appearing that WCM maintained no trading accounts in its name and has never been registered with the CFTC, id. ¶ 14;

---

[2] Plaintiff proffers that its investigation revealed no evidence that Unique Forex was actually incorporated. See Compl. ¶ 13

and it appearing that Masanko commingled his personal assets with customer funds in the WCM checking account, and that Masanko used WCM's "corporate" account to fund his own personal expenses, id. ¶ 49;

and it appearing that Lanzana and Masanko maintained their customers' trust by providing fabricated account statements, see id. ¶¶ 26-27, 30, 40-41, 51, by disseminating links to YouTube videos in which they described trades and discussed profits, see id. ¶¶ 29, 40, 52, and by sending falsified annual tax documents to customers, see id. ¶¶ 33, 42, 53;

and it appearing that Lanzana transferred less than $69,000 of the money collected from customers into trading accounts, but none of these accounts were registered to the purported trading companies, id. ¶ 63;

and it appearing that Lanzana misappropriated approximately $350,000 of the customer funds to pay other customers who requested return of their funds, more than $75,900 for his own personal use, and approximately $52,900 to pay Masanko "a portion of the performance fees" charged to the customers that Masanko solicited, id.;

and it appearing that Plaintiffs filed a six-count Complaint on August 21, 2017 alleging: (1) Fraud in Connection with Forex, id. ¶¶ 64-73; (2) Use of a Manipulative or Deceptive Device, Scheme, or Artifice to Defraud, id. ¶¶ 74-82; (3) Fraud by a Commodity Pool Operator ("CPO") and Associated Person ("AP") of a CPO, id. ¶¶ 83-93; (4) Failure to Register as a Commodity Pool by Lanzana and BBP, id. ¶¶ 94-99; (5) Failure to Register as an AP of a CPO by Masanko, id. ¶¶ 100-105; and (6) Prohibited Activities of a CPO by Lanzana and BBP, id. ¶¶ 106-110;

and it appearing that Defendants have failed to answer or otherwise respond as of the date of this Order;

and it appearing that Plaintiffs filed the instant Motion for Default Judgment seeking: (1) a permanent injunction to enjoin Defendants from perpetrating future violations of the Act, Pl.'s Br. at 30-31; (2) a permanent injunction prohibiting Defendants from trading in the future, id. at 31-32; (3) Restitution and Disgorgement in the amount of $762,807.24, id. at 32-34; (4) a Civil Monetary Penalty in the amount of $1,950,000, id. at 34-35; and (5) post-judgment interest on any restitution and civil monetary penalty, id. at 36;

and it appearing that default judgment may only be entered against a properly-served defendant, see Edwards v. Gahm, Civ. No. 16-5702, 2018 U.S. Dist. LEXIS 44967, at *3 (D.N.J. Mar. 20, 2018);

and it appearing that the docket reflects service upon all Defendants, ECF Nos. 16-19;

and it appearing that, before entering a default judgment, a district court must "look into its jurisdiction both over the subject matter and the parties," Jackson Hewitt, Inc. v. Dupree-Roberts, Civ. No. 13-388, 2013 U.S. Dist. LEXIS 111049, at *6 (D.N.J. Aug. 7, 2013);

and it appearing that this Court has subject-matter jurisdiction because the case presents a federal question by alleging violations of the Commodity Exchange Act, 7 U.S.C. §§ 1-26;

and it appearing that a court may exercise either general or specific personal jurisdiction over a defendant, Malik v. Cabor Oil & Gas Corp., 710 F. App'x 561, 563 (3d Cir. 2017);

and it appearing that "[g]eneral jurisdiction exists when the plaintiff's claim arises out of the defendant's continuous and systematic contacts with the forum state," id. (internal quotation marks and alterations omitted), while specific jurisdiction exists "when the cause of action arises from the defendant's forum-related activities," id. (internal quotation marks omitted);

and it appearing that Plaintiff's allegation that "Defendants transacted business in this District, and certain of the acts and practices in violation of the Act and Regulations occurred,

4

are occurring, or are about to occur within this District," Compl. ¶ 8, is sufficient to establish specific personal jurisdiction over all Defendants;

and it appearing that, before entering a default judgment, a court must also determine whether the plaintiff's complaint sufficiently pleads a cause of action and whether the plaintiff has proved damages, Chanel, Inc. v. Gordashevsky, 558 F. Supp. 2d 532, 536, 538 (D.N.J. 2008);

and it appearing that, relevant to Count One, the Act makes it unlawful for any person, in connection with a commodity interest transaction, "to cheat or defraud or attempt to cheat or defraud the other person, . . . willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record, [or] . . . willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for or . . . with the other person," see 7 U.S.C. § 6b(a)(2)(A) to (C);

and it appearing that Regulation 5.2(b) makes it unlawful to engage in any of the above-referenced conduct "by use of the mails or by any means or instrumentality of interstate commerce . . . in connection with any retail forex transaction," see 17 C.F.R. § 5.2(b);

and it appearing that, relevant to Count Two, the Act makes it unlawful for any person to use or attempt to use "any manipulative or deceptive device or contrivance, in contravention of" the governing Rules and Regulations, see 7 U.S.C. § 9(1);

and it appearing that 17 C.F.R. 180.1(a) prohibits the same conduct;

and it appearing that, relevant to Count Three, 7 U.S.C. § 6o(1)(A) and (B) make it unlawful for certain persons and entities, including Commodity Pool Operators ("CPOs") and

5

Associated Persons ("APs") of CPOs, "by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly" "to employ any device, scheme, or artifice to defraud" or "to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon" any current or prospective client or participant;

and it appearing that Plaintiff sufficiently pled that Blackbox and Unique Forex acted as commodity pools by alleging that each was "an investment trust, syndicate, or similar form of enterprise operated for the purpose of trading commodity interests, specifically retail off-exchange forex transactions," see 7 U.S.C. § 1a(10) (defining "commodity pool" as "any investment trust, syndicate, or similar form of enterprise operated for the purpose of trading in commodity interests");

and it appearing that Plaintiff sufficiently pled that Lanzana acted as a CPO of BBP and Unique Forex by alleging that "he was a person engaged in a business that is of the nature of a commodity pool, investment syndicate, or similar form of enterprise and, in connection therewith, solicited, accepted, and received funds from others for the purpose of trading commodity interests, specifically retail off-exchange forex transactions," see 7 U.S.C. § 1a(11) (defining a CPO as "any person . . . engaged in a business that is of the nature of a commodity pool, investment trust, syndicate, or similar form of enterprise, and who, in connection therewith, solicits, accepts, or receives from others, funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities");

and it appearing that Plaintiff sufficiently pled that Masanko acted as an AP of a CPO by alleging that "he was a natural person associated with a CPO, Lanzana, as a partner, officer, employee, consultant, or agent in a capacity involving the solicitation of funds for participation in a pooled investment vehicle," see 17 C.F.R. § 5.1(d)(2) (defining AP of a CPO as "any natural

6

person associated with a [CPO] . . . as a partner, officer, employee, consultant, or agent . . . in any capacity which involves" "the solicitation of funds, securities, or property for a participation in a pooled investment vehicle");

and it appearing that Plaintiff has sufficiently pled the violations set forth in Counts One, Two, and Three by alleging that Defendants "email[ed] customers account statements and links to YouTube videos showing forex trades that never happened and profits that did not exist and misrepresenting that customer funds were being held in Blackbox Pulse or Unique Forex accounts at FXCM when, in fact, they were not," and "by misappropriating customer funds," see Compl. ¶¶ 68, 77, 88-89, thereby making false representations for the purpose of defrauding investors in violation of the aforementioned provisions of the Act;

and it appearing that, relevant to Count Four, 7 U.S.C. § 6m(1) makes it "unlawful for any . . . [CPO] . . . to make use of the mails or any means or instrumentality of interstate commerce in connection with his [CPO] business" unless registered with the Commission as a CPO;

and it appearing that 17 C.F.R. § 5.3(a)(2)(i) requires any CPO to register with the CFTC;

and it appearing that Plaintiff sufficiently pled the violations set forth in Count Four by alleging that Lanzana "acted as a CPO without the benefit of registration with the CFTC as a CPO, and in connection with this CPO business, made use of the mails or instrumentalities of interstate commerce," see Compl. ¶ 97;

and it appearing that, relevant to Count Five, 7 U.S.C. § 6k(2)(i) makes it "unlawful for any person to be associated with a [CPO] as a partner, officer, employee, consultant, or agent . . . in any capacity that involves the solicitation of funds, securities, or property for participation in a commodity pool . . . unless such person is registered with the Commission" as an AP of a CPO;

and it appearing that 17 C.F.R. § 3.12(a) prohibits the same conduct;

and it appearing that Plaintiff sufficiently pled the violations set forth in Count Five by alleging that Masanko "acted as an AP of a CPO as a partner, officer, employee, consultant or agent in a capacity involving the solicitation of funds for participation in a commodity pool, without being registered with the Commission," see Compl. ¶ 103;

and it appearing that, relevant to Count Six, 17 C.F.R. § 4.20(a)(1) requires a CPO to "operate its pool as an entity cognizable as a legal entity separate from that of the [CPO]," with certain exceptions not applicable here, and that 17 C.F.R. § 4.20(c) prohibits CPOs from "commingl[ing] the property of any pool that it operates or intends to operate with the property of any other person";

and it appearing that Plaintiff sufficiently pled the violations set fourth in Count Six by alleging that Lanzana "fail[ed] to operate at least the Unique Forex pool as an entity cognizable as a legal entity separate from that of Lanzana, including by operating a bank account in the name of 'Thomas L. Lanzana DBA Unique Forex,' and by commingling his funds with customer funds in multiple bank accounts," Compl. ¶ 108;

and it appearing that Plaintiff alleges that Lanzana and Masanko's actions underlying the pending claims occurred within the scope of their employment, office, or agency with BBP and WCM, see Compl. ¶¶ 69, 71, 78, 80, 91, 92, 98, 104, 109;

and it appearing that Blackbox is accordingly liable for Lanzana's violations as alleged in Counts One, Two, Three, Four, and Six, see 7 U.S.C. § 2(a)(1)(B) (imposing liability upon corporate entities for acts, omissions, and failures of the entities' agents that occur within the scope of the agents' employment, office, or agency); 17 C.F.R. § 1.2 (same);

and it appearing that WCM is liable for Masanko's violations as alleged in Counts One, Two, Three, Five, and Six for the same reasons;

and it appearing that Lanzana and Masanko are individually liable for the violations of BBP and WCM, respectively, as set forth in Counts One and Two, as controlling persons pursuant to Section 13(b) of the Act, see 7 U.S.C. § 13c(b) (imposing liability upon "[a]ny person who, directly or indirectly, controls any person who has violated any provision of [the Act] or any of the rules, regulations, or orders issued pursuant to [the Act] . . . for any such violation" provided that the controlling person "did not act in good faith or knowingly induced, directly or indirectly" the violation);

and it appearing that, based upon the foregoing, Plaintiff has sufficiently pled the causes of action alleged in Counts One through Six of the Complaint;

and it appearing that the allegations in Plaintiff's Complaint, ECF No. 1, the Appendices submitted with Plaintiff's Motion for an Order to Show Cause, which contain extensive corporate records and financial statements, ECF Nos. 4.1 to 4.8, and the Declaration of Joy McCormack submitted in support of the pending Motion for Default Judgment, ECF No. 32.1 prove the damages Plaintiff alleges;

and it appearing that courts consider the following three factors in deciding whether to grant a default judgment: (1) "prejudice to the plaintiff if default is denied"; (2) "whether the defendant appears to have a litigable defense"; and (3) "whether defendant's delay is due to culpable conduct," Jackson Hewitt, Inc. v. Dupree-Roberts, Civ. No. 13-388, 2013 U.S. Dist. LEXIS 111049, at *5 (D.N.J. Aug. 7, 2013);

and it appearing that Plaintiff—and Defendants' victims—would suffer prejudice if the Court denied default because it would cause further delay in returning the funds, through restitution and disgorgement, that the victims "invested" in this scheme to defraud;

and it appearing that denial of default would further prejudice Plaintiff by failing to preclude the possibility that Defendants continue victimizing unknowing investors in the absence of a permanent injunction prohibiting Defendants from trading in the future;

and it appearing that, based on the facts alleged in the Complaint, Defendants do not appear to have a litigable defense;

and it appearing that the Third Circuit has found that "[r]eckless disregard for repeated communications from plaintiffs and the court, combined with the failure to investigate the source of a serious injury, can satisfy the culpable conduct standard," Mrs. Ressler's Food Prods. V. KYZ Logistics LLC, 675 F. App'x 136, 142 (3d Cir. 2017);

and it appearing that Defendants' failure to respond to the Complaint—which contains allegations of serious financial injuries—for more than eighteen months constitutes willful conduct and therefore satisfies the culpable conduct standard;

and it appearing that all three factors accordingly support the entry of default judgment;

**IT IS** on this 14th day of March, 2019;

**ORDERED** that Plaintiff's Motion for Default Judgment, ECF No. 31, is hereby **GRANTED**; and it is further

**ORDERED** that Defendants are permanently restrained, enjoined, and prohibited from engaging in conduct that violates the Act; and it is further

**ORDERED** that Defendants are permanently restrained, enjoined, and prohibited from trading or entering into any transactions involving commodity interests in the future; and it is further

**ORDERED** that judgment is hereby entered against Defendants Lanzana, Masanko, Blackbox Pulse and White Cloud Mountain in the amount of $762,807.24, which represents restitution and/or disgorgement of profits, plus post-judgment interest; and it is further

**ORDERED** that Defendants shall pay a civil monetary penalty in the amount of $1,950,000.00, plus post-judgment interest.

*/s Madeline Cox Arleo*<br>
**MADELINE COX ARLEO**<br>
**UNITED STATES DISTRICT JUDGE**